# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LAWRENCE KENNETH ALLEN, II    *

Plaintiff                     *

v                             *       Civil Action No. RWT-10-1261

AUTUMN DURST, et al.          *

Defendants                    *
                            ***

## MEMORANDUM OPINION

Pending are Defendant Nurse Autumn Durst's Motion to Dismiss or for Summary Judgment, ECF No. 19, and Defendants Sergeant McAlpines, Sergeant Hughes, Correctional Officer Spencer, and Correctional Officer Heavner's (the "Correctional Defendants") Motion to Dismiss or for Summary Judgment, ECF No. 27. Although Plaintiff was advised of his right to file a response in opposition to Defendants' motions, and the consequences of failing to do so, Plaintiff has filed nothing further in this case. See ECF Nos. 20 and 29. For the reasons that follow, the motions, construed as Motions for Summary Judgment, shall be granted.

## Background

In a Complaint filed May 19, 2010, Plaintiff alleges Dr. Majid Aranout, Nurse Rhonda Skidmore, Defendant Nurse Autumn Durst, Nurse Steven Bray, Shannon Dudley and Defendant Lloyd Kemp[1] "sat back" and participated in "this new doctor's refusal"[2] to treat his multiple sclerosis (MS). ECF No. 1. Plaintiff claims he blacked out after Dr. Aranout told security staff

---

[1] The person referred to in the Complaint as physical therapist Lloyd Kemp is actually Lloyd Hott. See ECF No. 15. Although service was never effected on Mr. Hott, the Complaint contains no allegations of wrongdoing by Mr. Hott and all claims against him shall therefore be dismissed.

[2] The "new doctor" Plaintiff references appears to be Dr. Aranout. Dr. Aranout, Nurse Rhonda Skidmore, Nurse Steven Bray and Shannon Bray were not named as defendants in this case. Had they been named, they would be entitled to summary judgment for reasons apparent herein.

not to bring him to the infirmary to receive Copaxone injections at which time Defendants Sergeant McAlpine and Officer Spencer jumped on him in the hallway, injuring his head, twisting his ankle and spraining his knee. Plaintiff further claims that while blacked out from an MS flare, security staff dragged him out of his cell on his face and threw him in a holding cell in urine and feces. ECF No. 1 at p. 4. Plaintiff provides no dates for the alleged incidents and has failed to provide more details although ordered to do so. ECF Nos. 23 and 25.

Defendant Nurse Autumn Durst, the only medical Defendant served in this case, maintains that she has responded to Plaintiff's medical needs. She states Plaintiff receives Copaxone injections regularly but at times refuses to accept the medication despite being warned by her and other medical staff that skipping doses of Copaxone may cause him to experience a flare in his MS. Defendant Durst admits that at times Copaxone is not available in the pharmacy for "short periods," but Plaintiff is restarted on the medication as soon as the supply is replenished. ECF No. 19 at Ex. A.

On April 30, 2010, at approximately 4:10 p.m. Officer Richard, who was assigned as an escort officer in Plaintiff's housing unit, found Plaintiff lying on the floor of his cell face down. ECF No. 27 at Ex. 1, p. 2. Richard opened the feed-up slot on Plaintiff's cell door and asked if he was okay. Plaintiff indicated he needed help. Richard notified Defendant Sergeant Hughes, who responded to the cell along with Officers Keefer and Cable. The officers entered the cell, placed Plaintiff in a wheel chair, and took him to medical where he was evaluated by Defendant Durst. Defendant Durst found no sign of significant injury or post-seizure symptoms. A small cut was found on Plaintiff's forehead just above the hair line, which was treated, and Plaintiff was returned to his cell.

On May 13, 2010, Officer Gilpin states he was escorting Plaintiff from a doctor visit in the medical room in Housing Unit No. 1. ECF No. 27 at Ex. 1, p. 7. Plaintiff began resisting the escorting officers, Walker and Defendant Officer Spencer, by pulling and attempting to jerk away from them. Despite assistance from two other officers, Plaintiff continued to resist and eventually lost his balance and fell to the floor. The escorting officers helped Plaintiff to his feet and escorted him back to his cell after Plaintiff refused to be seen by medical staff. Plaintiff was returned to his cell with no further incident. Id. at Ex. 1, pp. 8-9. Officer B. Briskly later escorted Nurse Steve Bray to Plaintiff's cell to check on him but Plaintiff would not answer any questions and refused to come out of his cell to have his vital signs checked. Id. at Ex. 1, p. 10. Plaintiff was advised at that time to place a sick-call for other complaints.

**Injunctive Relief**

On December 6, 2010, Plaintiff filed a document which was construed as a Motion for Injunctive Relief. ECF No. 26. The "motion" consists of a note stating that he is being held in an isolation cell, but provides no details regarding when he was placed in isolation or why.

A preliminary injunction is an extraordinary and drastic remedy. See Munaf v. Geren, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, __ U.S. __, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Plaintiff has failed to provide any evidence that he will suffer irreparable harm if this Court does

not intervene on his behalf. Indeed, the record evidence indicates that Plaintiff's medical needs are being addressed and it is only his lack of cooperation that prevents him from receiving consistent care. Plaintiff's request for injunctive relief will be denied.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain by virtue of its guarantee against cruel and unusual punishment." Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." DeLonta v. Angelone, 330 F. 3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Farmer, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995)

5

quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000); citing Liebe v. Norton, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. Id. at 169 (actions inconsistent with an effort to hide a serious medical condition, refutes presence of doctor's subjective knowledge).

Defendant Durst argues that the Complaint against her must be dismissed for failure to comply with Maryland's Health Care Malpractice Claims Act ("the Act"). ECF No. 19; see Md. Code Ann., Cts & Jud. Proc. §3-2A-01, et seq. The Act provides in pertinent part that any negligence claim for malpractice seeking more than $30,000 in monetary damages must first be submitted to the Health Claims Alternative Dispute Resolution Office. See id. at §3-2A-02. The alternative dispute resolution process cannot be avoided by filing a malpractice claim in this court. See Davison v. Sinai Hospital of Baltimore, Inc., 462 F. Supp. 778, 779-81 (D. Md. 1978). To the extent Plaintiff is alleging negligence, the complaint is subject to dismissal for failure to comply with state law exhaustion requirements.

Medical records submitted by Defendant Durst in support of the Motion for Summary Judgment reflect that Plaintiff is given Copaxone injections for treatment of his MS on a regular

basis. ECF No. 19 at Ex. B, pp. 8-17. When Defendant Durst evaluated Plaintiff on April 30, 2010, she advised him that refusing to take the medication would result in repeated MS flares, called the doctor to make him aware of the situation, scheduled Plaintiff for a recheck of his vital signs in four hours, and told Plaintiff to report any significant changes. Id. at p. 4. Plaintiff offers no opposition to the evidence presented. Thus, the undisputed facts establish that the medical care provided to Plaintiff was constitutionally adequate, entitling Defendant Durst to summary judgment on all claims.

Section 1983 liability on the part of the supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." Miltier v. Beorn, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); see also Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984). The Correctional Defendants assert that medical assistance was called for Plaintiff immediately when it was discovered he needed attention. ECF No. 27 at Ex. 1. The undisputed evidence establishes that none of the Correctional Defendants prevented Plaintiff from receiving medical care and the only time Plaintiff did not receive medical care was when he indicated he did not want it. Thus, the Correctional Defendants are entitled to summary judgment in their favor as to Plaintiff's medical claims.

With respect to any excessive force claim implied in the Complaint, there is no evidence that any force was used against Plaintiff outside of his bald allegations. The officers' accounts of their interactions with Plaintiff, which Plaintiff has failed to dispute, evidence their attempts to deal peaceably with an uncooperative inmate. Thus, to the extent an excessive force claim is

alleged, it is dismissed.

A separate Order follows.

Date: February 10, 2010                             /s/
                                    ROGER W. TITUS
                                    UNITED STATES DISTRICT JUDGE